# MOULTRIE v DEPARTMENT OF CORRECTIONS
## Case No. 86-0672R
State of Florida, Division of Administrative Hearings
June 24, 1987

### APPEARANCES OF COUNSEL

**Peter P. Sleasman,** Florida Institutional Legal Services, Inc., for petitioner.

**Benjamin E. Poitevent,** Assistant Attorney General, Department of Legal Affairs, for respondent.

### OPINION

P. MICHAEL RUFF, Hearing Officer.

Pursuant to notice, this cause was set for formal hearing before P. Michael Ruff, duly designated Hearing Officer, on March 17, 1987.

Shortly prior to the time scheduled for hearing in this matter, the parties advised the undersigned of their agreement to submit written stipulations as to the facts underlying the legal issue involved and of their agreement that a formal hearing would not be necessary. Thereafter, after being granted time to arrive at stipulations, the parties submitted written stipulations as to the facts and, ultimately, Proposed Findings of Fact and Conclusions of Law.

This cause arose upon a Petition for the Determination of the Validity of a Rule of the Florida Department of Corrections (Department). The Petitioner, Phillip Moultrie, has challenged the validity of Rule 33-22.008(2)(b)13, a, b and c, *Florida Administrative Code*, on the basis that it is an invalid exercise of delegated legislative authority. Petitioner acknowledges that it is not attacking the subject rule as being arbitrary or capricious, either facially or as to its application.

This cause came to the undersigned most recently upon remand from the First District Court of Appeals, wherein that Court reversed the undersigned's earlier finding that Petitioner lacked standing to initiate and prosecute this cause, *Moultrie v. Florida Department of Corrections*, 496 So.2d 191 (Fla. 1st DCA 1986). The case was set for hearing on March 17, 1987, but the parties, as indicated above, stipulated that a formal hearing was unnecessary and that factual stipulations could be arrived at if the parties were allotted time to do so. Thereafter, the parties timely submitted a stipulation as to the facts involved in this proceeding and, on April 20, 1987, timely filed their Proposed Final Orders containing stipulated Findings of Fact and Proposed Conclusions of Law. The parties have waived the pertinent time limits for the setting of the hearing and the rendition of the Final Order.

The issue to be resolved in this proceeding concerns whether Rule 33-22.008(2)(b)13,a, b and c, *Florida Administrative Code*, is an invalid exercise of delegated legislative authority.

## FINDINGS OF FACT

1. The Petitioner, Phillip Moultrie, seeks an administrative determination of the validity of Rule 33-22.008(2)(b)13a, b and c, *Florida Administrative Code*. The Petitioner is a prisoner of the State of Florida in the lawful custody of the Florida Department of Corrections (Department).

2. On June 8, 1981, the Petitioner was charged with a disciplinary infraction involving destruction of State property at the Zephyrhills Correctional Institute in Zephyrhills, Florida. A disciplinary team was

convened to hear the charges against the Petitioner involving property destruction. A disciplinary team is a group of Department employees designated by the institution's administrator to handle major disciplinary actions. In most cases, the team is made up of a classification officer, a correctional officer and either a work supervisor or educational staff member. See Rules 33-22.002(1) and 33-22.003(1)(c), *Florida Administrative Code.*

3. The disciplinary team, proceeding in accordance with existing Department rules, found the Petitioner guilty of destruction of State property. The team recommended a penalty of a loss of 60 days gain time, 60 days disciplinary confinement, and, in accordance with then-existing Rule 33-3.08(6)(b)4a, b and c (substantially re-enacted and renumbered as Rule 33-22.008(2)(b)13a, b and c, the rule under challenge), the team assessed $300 against the Petitioner, representing one half of the cost of replacement or repair of the State property involved. Petitioner's cell mate was also charged with a like disciplinary infraction and assessed the other $300 of the total $600 property damage loss the Department was found to have sustained.

4. The Petitioner's inmate bank account did not contain enough money to pay the entire cost of his assessment. Therefore, a "notation" or "debit" was placed on his bank account whereby funds received by him would be deducted from that account as payment on the $300 assessment until it was paid in full.

5. The estimate of damages relied upon by the disciplinary team in assessment the amount Petitioner was to pay was provided by a commercial vendor, Mr. Nick Meyers, representing Chadco Products Company of Atlanta, Georgia. The estimate indicated that damages to the Petitioner's cell at Zephyrhills Correctional Institution amounted to $600.

6. The Petitioner was later transferred to Florida State Prison at Starke, Florida. While at the State Prison, the Department continued to make withdrawals against his inmate bank account from July 24, 1981 until October 9, 1985, when the $300 assessment was fully paid. The deductions from Petitioner's inmate bank account were made regardless of the source of the funds. Some of the funds in the bank account came from a Department of Corrections work program, Prison Rehabilitative Industries and Diversified Enterprises (PRIDE). Other funds contained in that bank account came from private sources. The monies deducted from the inmate bank account were sent directly to the Zephyrhills Correctional Institution. The funds were deposited in a general operating account to be used by that institution.

210

7. Inmates appearing before disciplinary teams are entitled to be advised of the charges against them and to be assisted by Department staff members and to have the possible range of punishments explained to them. They are entitled to be advised of the decision of the disciplinary team and to be advised of their rights to appeal that decision through the inmate grievance procedure. Inmates are not permitted to be represented by counsel at these hearings and further, are not permitted to cross-examine witnesses at the hearing. The disciplinary hearing of June 8, 1981 was conducted in accordance with procedural guidelines established by RUle 33-22.006 and 33-22.007, *Florida Administrative Code.*

8. Subsequent to the hearing, the Petitioner utilized the Department's grievance procedure regarding the imposition of the assessment against his inmate bank account. He filed grievances both at the institutional level and to the Department's central office. The institutional level grievance was denied and the appeal to the Department's central office, was also denied.

9. The Department relied upon renumbered Rule 33-22.008(2)(b)13 as authority to require the Petitioner to make the subject restitution to the State of Florida.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction of the subject matter of and the parties to this proceeding. Section 120.56, *Florida Statutes.*

The Petitioner has substantially affected by Rule 33-22.08 and thus has standing to proceed with this petition. This conclusion is made solely in accordance with the decision of *Moultrie v. Florida Department of Corrections,* 496 So.2d 191 (Fla. 1st DCA 1986).

The petition alleges the invalidity of Rule 33-22.008(2)(b)13 based solely on the theory that it is an alleged invalid exercise of delegated legislative authority. The Petitioner does not allege arbitrariness or capriciousness in the application of the rule by the Department.

Rule 33-22.008(2)(b), *Florida Administrative Code,* lists the actions which may be taken by a disciplinary team against an inmate if he is found guilty of a disciplinary charge. One alternative is to require the inmate to pay for damaged property. Rule 33-22.008(2)(b)13 permits the team to:

"13. Require inmates to pay for damaged, destroyed or misappropriated property or goods, whether state or personal;

211

a. If two or more inmates are each found to be responsible for the loss or destruction of an item, they shall be liable for the full amount; the total amount collected shall not exceed the amount of the loss. To the extent possible, an equal amount shall be collected from each inmate found responsible;

b. Payment for damaged, destroyed or misappropriated property shall be at the replacement value and inmate or staff labor costs shall not be included. However, outside labor costs may be charged when the damage is the result of a deliberate destructive act. In such cases, documentation shall be placed in the inmate file at the local institution detailing the cost involved. The total cost shall be reflected on the Disciplinary Report in Section IV;

c. If an inmate does not have sufficient funds to cover the repair or replacement cost, a notation shall be made on the inmate's bank account for possible future payment. Should the inmate ever receive money at the institution, the Department will be paid prior to issuing funds to the inmate."

The Petitioner challenges the Department's authority to enact and use this rule to impose an assessment against an inmate for property damages and which permits the Department to deduct funds from the inmate's bank account to pay those damage assessments imposed by the disciplinary team.

Although Petitioner agrees the Department has a statutory mandate to administer inmate bank account, to protect the financial interests of the State, and to establish prohibited acts and appropriate punishments for inmate violations thereof, Petitioner contends that that statutory authority does not extend to the promulgation of a rule which authorizes reimbursement to the State for damage to State property by the assessment of funds derived from private sources in an inmate's bank account. The Petitioner further argues that deductions made from the Petitioner's account were made regardless of the source of the funds.

The Petitioner has stipulated at paragraph 25 of the Notice of Stipulations, that "The source of some of the funds in Petitioner's inmate bank account came from Department of Corrections related work programs such as PRIDE." The Petitioner nevertheless contends that even though the Petitioner was employed by PRIDE in an accordance with statutory authority, his earnings were deposited in his inmate bank account and co-mingled with funds from private (unearned) sources, that the challenged rule is invalid because there is no statutory authority to assess against the privately derived funds of an inmate. Petitioner thus, in effect, argues that the Department's author-

212

ity is limited to the assessment of money *earned* by inmates and does not extend to other sources of income.

The Legislature has, however, accorded the Department, in Chapter 944, *Florida Statutes* (1985), a broad rule-making authority to implement the Department's statutory charge to govern and administer the correctional system, including enactment of rules of conduct for inmates, regarding punishments for misconduct and providing for the general operations of the Department. Thus, it is provided at Section 944.09(1)(b), (c), (e), (m), and (q) as follows:

(1) The Department shall adopt rules governing the administration of the correctional system and the operation of the Department, which rules shall related to:

. . . . . . . . . . .

(b) The rules of conduct to be observed by inmates and the categories of violations according to degrees or levels of severity, as well as the degrees of punishment applicable and appropriate to such violations.

(c) Disciplinary procedures and punishment.

. . . . . . . . . . .

(e) The operation and management of the correctional institution or facility and its personnel and function.

. . . . . . . . . . .

(m) Payments to prisoners for work performed. Such payments, if any, shall include restrictions on the use of earnings, including payments for support of dependents and release reserves. These rules shall provide that no payment shall be made to any prisoner who fails to perform the work assigned satisfactorily.

. . . . . . . . . . .

(q) *Such other rules as in the opinion of the Department may be necessary for efficient operation and management of the correctional system..* (Emphasis supplied.)

The above statutory authority clearly mandates that the Department shall establish a code of conduct and appropriate punishments regarding violations thereof by inmates. That mandate may be reasonably interpreted to provide that a rule may be enacted holding inmates accountable for the willful destruction of property which is undisputedly the situation underlying the controversy at bar. Additionally, Section 944.09(1)(m), *Florida Statutes,* quoted above, relating to the Department's authority to adopt rules governing the administration of the correctional system and providing for payments to prisoners for

work performed clearly authorizes the Department to impose restrictions on the use of earnings of prisoners. Thus, the above broad grant of legislative authority allows the Department to enact rules to exercise control over inmate bank accounts and to impose restrictions on the use of the funds earned by prisoners.

The rule under attack herein, if for no other reason enumerated in the above-quoted statutory authority, would appear to be reasonably mandated by the broad rule-making authority provided in Paragraph (q) quoted above, which allows the Department to enact such other rules as in its own opinion may be necessary for the *efficient operation and management of the correctional system.* A rule requiring inmates who willfully destroy public property to make restitution clearly is reasonably related to this statutory charge for the Department to enact rules necessary for the efficient operation and management of the correctional system. It is clearly necessary to the efficient operation and management of that system that the Department take steps, through rules, to ensure that its equipment and the furnishings of its correctional facilities are maintained in good condition and not damaged or destroyed. This is admittedly a very broad, "catch all" legislative delegation of authority, but the wisdom and intent of the legislature in granting such broad authority to the Department to carry on its administrative and operational duties cannot herein be gainsaid. In any event this is not the only statutory provision supportive of the rule.

Although Paragraph (m), quoted above, seems to only provide authority for the Department to impose restrictions on inmate funds to the extent that they constitute "earnings," and is silent concerning any specific Department authority to control or impose restrictions on privately derived inmate funds, the Department, under the broad discretion granted in Section 944.516, *Florida Statutes* (1985), has authority to enact rules such as those involved at bar, directed at assessing against, controlling and restricting the use of all inmate funds whether privately derived or earned through Department-sponsored work programs. Section 944.516(1)a-e, (3) and (4), *Florida Statutes* (1985), speaks to this point:

> "Money or Other Property Received for Personal Use or Benefit of Inmates; Deposit; Disposition of Unclaimed Trust Funds—*The Department of Corrections shall protect the financial interest of the State with respect to claims which the State may have against inmates in State institutions under its supervision and control and shall administer money and other property received for the personal benefits of such inmates.*
>
> .  .  .  .  .  .  .  .  .  .  .

214

(1) The Department of Corrections may:

(a) Accept and administer as a trust *any* money or other property received for the personal use or benefit of any inmate. (Emphasis supplied.)

(b) Deposit money so received in banks qualified as State depositories.

(c) Withdraw any such money and use it to meet the current needs of the inmate as they may exist from time to time.

(d) As trustee, invest in the manner authorized by law for fiduciaries such monies not required to be used for current needs of the inmate.

(e) Co-mingle such monies for the purpose of deposit or investment.

.   .   .   .   .   .   .   .   .   .   .   .

(3) Monies received by the Department in payment of claims of the State against inmates shall be transmitted to the treasurer for deposit into the general revenue fund.

(4) Upon the death of any inmate in an institution affected by the provisions of this section, any unclaimed money held for him in trust by the Department or by the treasurer *shall be applied first to the payment of any unpaid State claim against the inmate.*

.   .   .   .   .   .   .   .   .   .   .   .

The clear legislative intent to be gleaned from the above-quoted paragraphs of Section 944.516, *Florida Statutes,* is that the State can have legitimate claims against inmates in its correctional institutions which claims are to be protected, recovered and remedies by the Department of Corrections pursuant to the above mandate. The State clearly has a financial interest in the public property used to operate and manage its correctional system, including the property destroyed or damaged in the situation at bar. The above-quoted authority charges the Department of Corrections with protecting the financial interest of the State, of which the interest of keeping property used in operating its correctional facilities in good repair is clearly one. The Department being charged with protecting the State's financial interest in this and other particulars, togther with the above-quoted paragraphs, which imply that the Department is authorized to receive money in payment of claims of the State against inmates, is a legitimate additional basis for determining that the subject rule is properly promulgated within the bounds of the authority granted the Department by the Legislature, in addition to that rule-making authority embodied in Section 944.09, *Florida Statutes.*

Additionally, by the paragraphs of Section 944.516, *Florida Statutes,*

**215**

quoted above, the Department occupies the position of a trust of *any money* or *other property* received for the personal use or benefit of any inmate. Because of this trusteeship and by authority of the above-quoted statutory provisions, the Department has clearly been given broad discretion to control inmate bank accounts, to co-mingle inmate funds and to invest them and pay them out for proper purposes within the scope of its authority as trustee. It is within that authority to pay out claims for destruction of public property and to assess inmate bank accounts for payment of such claims for damage caused by inmates. Section 737.402, *Florida Statutes,* regarding powers of trustees states:

"From the time of creation of the trust until final distribution of the assets of the trust, a trustee has the power to perform every act that a prudent trustee would perform for the purposes of the trust, *without court authorization,* including, but not limited to, the power specified in subsections (2) and (3). (Emphasis added.)

(2) Unless otherwise provided in the trust instrument, a trustee has the power:

(t) *To pay or contest any claim;* to settle a claim by or against the trust by compromise, arbitration, or otherwise; and to release any claim belonging to the trust in whole or in part to the extent that the claim is uncollectable. (Emphasis added.)

(u) To pay taxes *assessments,* compensation of trustee, and other expenses incurred in the collection, care, administration and protection of the trust. (Emphasis added.)

A "prudent trustee" is empowered to and would authorize payment from a trust in his charge to pay for property willfully destroyed when such an "assessment" had been settled by claim against the trust by "compromise, arbitration, or otherwise." Here the Petitioner was assessed a fair amount for the damage to State property as a result of a hearing conducted by the disciplinary board and after the Petitioner fully exercised his rights through the Department's regular and codified grievance procedure. In the above-quoted section alone the Legislature has granted the Department a broad authority to act as a "prudent trustee." Included within the powers granted to the Department by that section, wherein the Department is denominated trustee over inmate funds, is the concomitant power to protect the financial interest of the State. It is quite likely that this section quoted and discussed last above is alone a sufficient legislative mandate authorizing the enactment of the rule, especially in light of the subject matter of the rule being quite directly related to the subject matter of Section 944.516. When one reads Section 944.516, and particularly the subsection and

216

paragraphs quoted above in conjunction with the quoted paragraphs and subsection of Section 944.09, *Florida Statutes,* particularly with regard to Paragraph (q), the legislative authorization for the subject rule is patently obvious.

Additionally, and somewhat parenthetically, Section 945.025, *Florida Statutes,* concerning the jurisdiction of the Department of Corrections provides that the Department has:

". . . supervisory and protective care, custody, and control of the inmates, buildings, grounds, property and all other matters pertaining to the following facilities and programs for the imprisonment, correction, and *rehabilitation* of adult offenders. (Emphasis supplied.)"

Clearly a specific mandate exists for the Department to protect State property and financial interests and to rehabilitate adult offenders. The Department fails in its mandate to rehabilitate prisoners to the extent that it fails or is unable to require inmates to pay appropriate consequences for the willful destruction of public property. In view of the above considerations and authority, such is not the case. (See also Section 946.002(4)(a), *Florida Statutes,* whereby the Department may determine what portion of the monies earned by a prisoner working in the PRIDE program may be forfeited to the Department if he willfully violates the terms of his employment or the rules and regulations of the Department).

Thus, it can be seen that the Legislature has given the Department a broad scope of authority to promulgate rules to promote the efficient administration and operation of the State correctional system, including the discipline of prisoners within the Department's charge and has mandated that rehabilitation efforts be a central factor in that administration and discipline. It can be seen that the Legislature has granted specific authority to the Respondent to administer and control inmate funds and specific authority to protect "the financial interest of the State with respect to claims the State may have against inmates." Rule 33-22.008(2)(b)13 is a specific and germane response to those statutory mandates enumerated above and is designed to carry out the legislative direction that the Department protect State property, rehabilitate prisoners and administer inmate funds appropriately and in accordance with law, including the law pertaining to trusteeships.

The Petitioner's argument that the Department has no legislative authority to enact a rule authorizing assessment against inmate accounts when the funds therein are derived in whole or in part from private sources, as opposed to earned inmate income, is specifically

**217**

rejected. Obviously the Legislature did not intend by its enactment of Section 944.09 and Section 944.516, *Florida Statutes,* as quoted above, to provide such a limited authority for assessment by the Department against inmate funds. Not only has the Legislature given a broad authority to the Department to promulgate such a rule, but, particularly with regard to Section 944.516, it has indeed given it specific authority to proceed against income belonging to, but held in trust for, inmates, whether that money be from private sources or from earned income.

The various statutory provisions discussed above as part of the same statutory chapter and which involve the same overall subject matter, by title and by content, must be read *in pari materia.* Statutes read *in pari materia* should be interpreted to eliminate conflict amongst themselves to the greatest extent possible. If one were to accept Petitioner's argument that the Legislature has granted authority to the Department to promulgate rules allowing such assessment only against funds derived from institutional employment, such an interpretation would violate the obvious legislative intent expressed by the above-quoted and discussed statutory provisions, which intent becomes especially clear when they are considered together. Surely, if the Legislature had intended that funds derived by an inmate from private sources were beyond the reach of the Department for any purpose, it would have so stated. In fact, the Legislature, conversely, has provided the opposite and has mandated fairly specific authority to the Department, especially in Section 944.526, to enact rules designed to help it administer, withhold and assess against inmate funds derived from *all* sources within the ambit of the statutorily permissible purposes.

Finally, and somewhat collaterally, it is noted that the Petitioner contends that Section 945.091(8)(a) restricts the Department in the use of disciplinary reports to levy fines against inmates. That section provides:

> "The Department is authorized to levy fines only through disciplinary reports and *only against inmates placed on extended limits of confinement.* (Emphasis added.)"

The Petitioner thus argues that, inasmuch as it is undisputed that the Petitioner herein was not on "extended limits of confinement" status, that the Department has no authority to levy a fine at all. The Petitioner's argument, h however, ignores the fact that the assessment made against the Petitioner's bank account in this instance was not a fine at all. Rather, it was an assessment against that account by which the Department gained restitution for the value of the damage caused

218

by the Petitioner. (Precisely his one half of the total damage caused by him and his cell mate.) That amount was arrived at in accordance with the Department's rules and policies for determining replacement value, which the rule authorizes it to assess. That is, as the stipulated facts reveal, the Department got an appraisal from a supplier of such furnishings or equipment and used that as the basis for seeking restitution of the amount of financial loss the subject inmate caused on a "dollar-for-dollar" basis. The monies assessed against the Petitioner then were not a fine, but rather were compensation for the legitimate State claim of loss which the above authority and the subject rule permits it to charge against the inmate and his bank account. Thus, Section 945.091(8)(a), *Florida Statutes,* cited by Petitioner in support of this theory, is not germane.

In summary, the challenged rule has been shown to be based on sound principles of prison administration, discipline and rehabilitation in accordance with the overall statutory mandate contained in Chapters 944 and 945, *Florida Statutes.* If the Department were unable to employ the rule challenged here, prisoners willfully destroying public property could not readily be held accountable therefor and the rehabilitative demands the Legislature has placed on the Department would be significantly derogated. Rehabilitation and discipline of inmates will suffer when prisoners can not readily be held accountable for their actions such as were involved in the factual situation at bar.

The Department has not exceeded its legislative delegation of authority by the promulgation of Rule 33-22.008(2)(b)13, but rather the rule is an appropriate and valid response to the above broad mandate of authority as well as to the specific delegations by the Legislature which delineate how the Department shall administer the prison system, control inmate bank accounts, protect State property and financial interests and promulgate rules providing for the discipline, as well as the rehabilitation, of those lawfully within its charge.

A substantial body of decisional law holds that where it is established that the Legislature has delegated broad discretionary rule-making authority to an agency;

". . . the validity of regulations promulgated thereunder will be sustained so long as they are reasonably related to the purposes of the enabling legislation and are not arbitrary or capricious. . . ."

The Petitioner herein has not alleged nor argued that the subject rule is facially arbitrary or capricious or applied in that fashion nor as the Petitioner established that the subject rule is not acceptably and reasonably related to the enabling legislation in view of the above

**219**

discussions and conclusions. See *Florida Beverage Corporation v. Wynne*, 306 So.2d 200, 202 (Fla. 1st DCA 1974); *General Telephone Co. of Florida v. Florida Public Service Commission*, 6 FALR 1016, 1019 (Fla. 1984).

The subject rule is a permissible interpretation by the Department of the statutory guidelines underlying it and should be sustained, even if other interpretations are possible and may be thought by some to be preferable. See also *Department of Health and Rehabilitative Services v. Framat Realty, Inc.*, 407 So.2d 238, 242 (Fla. 1st DCA 1981); *Board of Medical Examiners v. Durrani*, 455 So.2d 515 (Fla. 1st DCA 1984); and *Florida Commission on Human Relations v. Human Development Center*, 413 So.2d 1251 (Fla. 1st DCA 1982). Accordingly, the Petitioner has failed to establish the invalidity of the challenged rule, and the Petition for Administrative Determination is hereby DISMISSED.

DONE and ORDERED this 24th day of June, 1987, in Tallahassee, Florida.